Good morning, Judge Graber, Judge Wadford, Judge Friedman. My name is Brian Lawler. I represent the appellant, Jeffrey Church, in this matter. Please, the Court, I'd like to reserve about three minutes for rebuttal. We are here off an appeal from the District Court of Nevada dismissing Mr. Church's claim for hostile work environment. It was a very narrow issue before the Court. Specifically, does a servicemember alleging hostile work environment or harassment under eSERA, specifically Section 4311, need to allege constructive discharge or wrongful termination? Well, there's more to the case than that. Your client has not worked for the city since 2003, correct? Correct. And he brought an action in 2003 against the city related to his employment and his complaints about his employment, correct? Yes, he did, Your Honor. The hostile work environment claim appears to me to arise from basically the same nucleus of facts as the claims that were brought in 2003, and he didn't bring that claim at that time. So why doesn't claim preclusion apply to bar this action, regardless of whether it otherwise might have merit? Because Mr. Church was not allowed to bring a hostile work environment. What do you mean by not allowed? Was there any binding court precedent that precluded him from doing so? There was not. There was, in fact, there were very few published opinions. Okay. Well, so how could he be prevented? He knew the facts. He knew, presumably, even more clearly in 2003 than in 2015, what was hostile allegedly about his work environment. So he had that opportunity. I guess I don't understand why that shouldn't bar him now. I think the way that we would invite the Court to look at this is, under the res judicata principles, you know, the four-part test, claims that could have been raised. And, again, I guess we get back to — Right. Why couldn't it have been raised? There was no case and no statute that said, this is prohibited. You cannot make this claim. Well, this Court in 1999 didn't really rule on the issue. It did — Right. Didn't prevent it. I'm not sure I have a good answer for that, Your Honor. That's the important question, though. Why — if we're arguing the res judicata, why couldn't he have brought the hostile work environment claim? You just acknowledged that the 1999 decision of this Court didn't preclude it. And there were a bunch of cases, which I think you cite, actually, on pages 14 and 15 of your brief, that — and, you know, there are district court cases from — and there are only a few of them from around the country which recognized a hostile work environment or at least considered and didn't reject a hostile work environment claim. So there was some law out there that suggested you could have brought the claim and no law until the Fifth Circuit's decision in 2011 that said directly you couldn't bring the claim, right? I think that's a fair assessment, Your Honor. And, again, I was not — I don't want to pass the buck. I was not counsel of record in 2003. I can't speak intelligently to why Mr. Church did not raise the hostile work environment claims then. But I think to turn that argument around, it bears examining that, in fact, the same nucleus of facts that were alleged using the terms constructive discharge in 2003 are really  Well, that's exactly — that's exactly your client's problem, in my view. Anyway, speaking just for myself, because ordinarily, when someone works somewhere and it doesn't work out, they have to bring all of their employment-related claims relating to the same activities all at one time. They can't bring, you know, a retaliation claim in one year and then three or four or ten years later come back and say, oh, by the way, now I have a different claim based on those same facts. And so I guess I just have difficulty seeing why he should be allowed this new bite at the apple. I would respectfully characterize this as not a new bite at the apple. I would characterize this as a bite at a green apple and the old one was a red apple. I mean, they're not exactly the same. Again, I can appreciate what the Court is saying with respect to no law that precluded a hostile work environment claim prior to 2003, but no laws, no case law specifically allowed it. And I realize that's somewhat of a self-defeating argument for me to now say that the vow to hire heroes amendment in 2011, which statutorily overrode the Carter decision, the Fifth Circuit Carter decision, should be retroactively applied. Well, I think I don't — I mean, to be honest with you, I think your position is not quite as weak as maybe you're making it sound. I mean, all you have to say is that in 2003, this statute did not permit a straight hostile work environment claim separated from a constructive discharge component. It did not allow such a claim until 2011 when Congress amended the statute. And in fact, that amendment was specifically intended to override a decision that had wrongly narrowed the statute. And so 2011 is a whole new ballgame. And there are exceptions to the claim preclusion principles that Judge Graber has mentioned. When a newly passed statute creates a new cause of action that didn't exist at the time of the original judgment, it seems to me that's your best response to her argument. But you're not — you don't think it was clear in 2003 that this claim couldn't have been brought? No, I absolutely do, Your Honor. We would not have filed this suit, nor would we have taken the appeal from the District Court of Nevada's decision, did we not think that that was exactly what Your Honor just said. It's abundantly clear that the statutory language in USERRA was silent, and still is, frankly, silent on the — Well, it was more than silent. It was a deliberate omission of the key phrase from the Title VII statute that had been construed to permit a hostile work environment claim. I think that's the reason the — right? Those four words absolutely were omitted from USERRA, terms, conditions, and privileges of employment. I don't think I agree with what Your Honor said about deliberately omitted. They were — they were omitted. And in fact, as the Court is aware, the Fifth Circuit relied so heavily on those specific words in finding that there was not a hostile work environment claim or cause of action under USERRA that Congress specifically put those exact words in. I'm just — no, I'm trying to advance your argument. I'm saying that the Fifth Circuit's analysis seems right to me, that the omission of that key phrase, which had already, as of 1994, been construed to encompass the hostile work environment claim under Title VII, seems fair to assume that maybe Congress, in 1994, didn't want that claim to be encompassed within USERRA, and it wasn't until 2011 that Congress got around to deciding, no, we do want that claim to be. I think I disagree with that, Your Honor. I mean, the Department of Labor's final statement to — on USERRA to Congress in 2010 specifically reiterated that it had always been the intent of Congress and the Department to make this an all-encompassing and broadly interpreted anti-discrimination statute under which hostile work environment should never have been allowed. So I think although it should have always been hostile work environment causes of action should have always been allowed. And that seems to me to support the argument against you that my colleagues have advanced, which is, well, there was certainly nothing barring not you, but your prior — your predecessor in 2003 from at least taking a run at raising the hostile work environment claim in 2003 under USERRA. And in fact, you're saying that the Department of Labor's position would have supported that claim. Well, I think it was — if you're in 2003 and you're at claimant arguing that you have been subjected to a hostile work environment, you are in the realm of the you don't know what you don't know. And there's no reason to assert a hostile work environment claim in 2003 when it's not until 8 years later that such a claim is even cognizable. But you're just — what you just said a second ago completely contradicts that. You're saying that the Department of Labor's position, I'm assuming back then and all along, has been that the original 1994 version of the statute did encompass a hostile work environment claim. And as of 2003, there was no precedent that foreclosed such a reading of the statute. And in fact, you had the administrative agency charged with, I suppose, interpreting the statute, saying that that was a permissible claim. So you should have brought — not you, but your client should have brought that claim in 2003 along with all the other claims, right? No. He should not have, because he just did not know that he had that right at the time. I get what DOL said in both 2005 in its final rules and in 2010 in its report to Congress. I think it's important to point out how Congress changed and overrode the — overruled the Carter decision. And I can speak intelligently to this, because I was lead counsel in the Carter case. I argued Carter in front of the — bless your honor — in front of the Fifth Circuit. We argued in February of 2011 — I actually flew home from a deployment. I was deployed overseas, flew back, argued in front of the Fifth Circuit in February of 2011. The opinion was written in, I think, May of 2011, and the statute was rewritten by November of 2011. The statute rewrite was not in the works of the clarification. It was not in the works until after the Carter opinion, where we, with the assistance of some lobby groups and the Department of Labor and the Solicitor General's office, got near with Congress and said, this needs to change. And they did it, which was — which was brilliant. And then there became the — the discrepancy as to, well, was it retroactive or should it be retroactively applied? I think the most liberal interpretation, as the Fishgold case, way back in the 1940s, indicates, this statute is broadly interpreted for the benefit of the servicemember. So I think to — to say — Sotomayor, has that always been true? That it has been or that it should have been? That it — that it is interpreted to be broadly protective of servicemembers. It is, Your Honor. Well, that — that seems to cut against your argument as well, because if there was doubt in 2003 about whether such a claim could be brought, if it's liberally construed in favor of the servicemember, that would suggest that he should have been encouraged to bring that claim. I don't dispute that, Your Honor. I think what was intended by the progeny of cases interpreting USERRA, the VRRA, and all the predecessor statutes, what was intended may or may not have actually been accomplished in reality. So although there is a long line of precedent indicating that the — that USERRA and those statutes should be broadly interpreted, were they not necessarily. And there's a — there are a lot of cases out there that don't broadly interpret this statute, USERRA, for the benefit of the servicemembers. We're here asking the Court to do so. And I think specifically to look at — we're kind of in the macro here, but looking at the micro — the District of Nevada specifically wrote in its order to assert a hostile work environment claim under 4311, one must allege constructive discharge. I read the order differently, and I don't think that — I think that's why we're not focusing so much on what the — the ground on which the district court relied. But I guess the — let me just be cut to the quick on my problem with your argument. It seems to me you're going to lose either way, because you either have to say that the claim has existed all along, and in which case I think Judge Graber's right, that claim preclusion principles will bar your claim, or if you're going to take the position that I was trying to articulate for you, that no, no, no, the claim didn't exist back in 2003. It sprung into existence for the first time in 2011. Then under Landgraf, you're going to be stuck with that statute not applying retroactively. And that's a disingenuous claim for me to make, to suggest that all of a sudden in 2011, you have this claim that you didn't have in 2003, and I get that we're in a catch-22 here, and I totally understand that, which is part of why the city's argument is difficult to rebut in some cases. It was supposed to be retroactively applied. The 2011 amendment was supposed to have been all-encompassing, and the Senate committee report, the House committee report, and the DOL rules and reports to Congress have all been unequivocal in suggesting that USERRA has always had and should have always had a claim for hostile work environment and harassment. I understand that, and that is problematic, and so the Your Honor's point is. So then they support the notion that it was a clarification, not an entirely new thing. Yes, sir. I agree, Your Honor, and that's – in fact, that's in the legislative notes to the Vow to Hire Heroes Act. This is a clarification. It's actually in the title of the statute. This is a clarification, clarifying that the statute has always provided this right. Did you want to save a little bit of time for a moment? I would, Your Honor. Thank you. Thank you. Mr. Hall. May it please the Court, my name is Carl Hall, representing the City of Reno. First of all, I'd like to address the Court's question about res judicata in this particular case, and I would point the Court or direct the Court to Judge Hicks' order of 2003. In that order, he considered five claims of action filed by Mr. Church, and count two was a breach of good faith and fair dealing, and he noted at 160 of the record that Church alleges he was denied benefits of his employment subject to harassing and threatening treatment and forced into early retirement by the defendants. And when reviewing that claim, Judge Hicks ruled that Church failed to exhaust his administrative remedies under the Employee Management Relations Board, which he was required to do under NRS 288-270. And my point here is that he actually did litigate a claim of a hostile work environment in 2003. Under another name. Under another name, exactly. And that's why, when we look at Judge Jones' orders, Judge Jones' order, he indicates that this case should not be relitigated, because it's already been litigated numerous times. I'd also like to address the issue of clarification. We started talking about the 2011 amendment. The 2011 amendment should not be given retroactive effect and allow the Mr. Church to renew his claim, because it brings new elements and liabilities to the city. Your position, then, is that the claim did not exist back in 2003? It did not spring into existence until the amendment in 2011? No. My position is I'm following the Ninth Circuit in 1997, and at that time you could have a hostile work environment, but it had to also encompass an adverse case rule. You're talking about that unpublished decision from 1999 of our court? Yes. Well, we never did come to ground on the question of whether USERRA did or did not require constructive discharge. We just – I think what we ended up doing is construing the terms of the consent decree that had been entered, and we, you know, resolved it on those grounds. I think we were quite clear in saying we don't need to resolve what the statute says, and it was an unpublished decision anyway. Well, to put it another way, there wasn't any authority out there indicating that a hostile work environment was a standalone, similar to Title VII. Because you didn't have conditions and privileges of employment language in the statute at that particular time. So I think courts were interpreting the – Well, let me just try to get a clarification of where – what your position is. As of 2003, are you saying that USERRA did permit a freestanding hostile work environment claim or not? I'm saying it did not. It did not. Right. I'm saying, however – excuse me, I didn't mean to interrupt. Go ahead. However? However, Church did bring a hostile work environment claim under a State statute. So he's already – we've already litigated this claim, and the Federal court has already resolved that claim in the city's favor. And what was the ground on which he lost the hostile work environment claim in the earlier action? Because he failed to exhaust his administrative remedies under Nevada law, under the EMRB. And you're saying that that would – that failure to exhaust would also bar a hostile work environment claim under USERRA? I'm saying that it would bar it on the basis of res judicata, that this issue has already been litigated. Well, but the issue is – that's why I was trying to ask you. Okay. So you're saying – So you're saying the issue that was resolved against him was the exhaustion one. And I'm just saying, okay, well, if we translate that over to this claim under USERRA, does that also bar the claim, the failure to exhaust? I'm sorry. Could you repeat the question? Yeah. So you're saying that in the earlier action, the reason he lost on his hostile work environment claim was because the court found that he had – he failed to exhaust administrative remedies. Right. And I'm just saying, okay, well, now we have a hostile work environment claim under USERRA. Does the failure to exhaust administrative remedies also bar that claim? Yes, because I believe it does, because it's already been litigated. We have the same facts. No, that's not the question. If – let's say different plaintiff, different case. They want to bring an otherwise – let's leave out some of the timeliness problems of this case. But let's say you want to bring a USERRA claim for hostile work environment today. Do you have to exhaust that claim first or not? No. I guess you would not have to, although if he had already brought the claim. So your argument, if I understand it, this is part of your claim preclusion argument, right? Right. In other words, you're saying he brought a hostile work environment claim. It was never decided on the merits. It was thrown out for failure to exhaust. But if the standard under claim preclusion is, was there a claim that he litigated or could have litigated, the answer is yes. He tried to litigate it, so he's precluded. Is that sort of your claim preclusion argument? Yes. No, it can't be, because you just said a second ago in response to my question that as of 2003, this claim did not exist. The claim he's trying to bring down did not exist. So he could not have litigated it back in 2003, right? Well, it's unclear. I believe the Court's held that you needed to have a hostile work environment in conjunction with a tangible employment action. So the stand-alone claim didn't work. The stand-alone claim is not viable. It doesn't have, adverse employment action doesn't have to be discharged. Well, it doesn't. Do you have any comment on the other ground that was discussed in the district court but was not the basis of the decision, that is the statute of limitations question? Had the statute of limitations, did the old statute of limitations apply and was the statute of limitations? Yes, I believe that the statute of limitations ran by virtue of 28 U.S.C. 1658. The four-year catch-all. The four-year catch-all. But, again, if you're That only works if there was a claim. Yes, exactly. That's the problem. If the claim first came into existence in 2011, as you were suggesting a little bit ago, then I don't think the statute of limitations argument works at all. Well, there's different elements with respect to 2011, and that's what the, what Church argued in his brief is when he relied on the dissent in Wallace that you don't need a constructive discharge in order to bring a house to work environment. So when the, when Congress amended USERRA and said the house to work environment is a stand-alone claim. And it said it was a clarification of the laws that had always been, didn't it? Okay. Well, that's a good question. I believe courts interpreted it in a way that it had not always been because it And that's why we were relying on Carter. Because it said it didn't contain the conditions of employment. Therefore, you didn't have a stand-alone house to work environment claim. And that's why the statute of limitations applies. Because if you apply landscraft, then I have additional elements and additional liability. And based upon the additional liability, the statute of limitations should apply. Because the statute was unambiguous. And when it's unambiguous, you don't need to look to the congressional history or the legislative history for interpretation. And that's what the courts did. They looked, that's what was held in the Middleton case was that the statute was unambiguous. And therefore, you didn't have to look to the statutory interpretation to find the statute of limitations applied in that particular case. So my point is, twofold, one, the case has already been litigated and that's what Judge Jones found was that he had already litigated a house to work environment. He had also indicated that he was subject to a house to work environment. And those claims were found not to have merit. Additionally, I would argue that the statute of limitations applies. Because the statute was unambiguous, 1658 applied. And for those reasons, I would ask you to deny the Mr. Church's motion for remand. Thank you. Thank you, counsel. Mr. Lawler, you have a little bit of time remaining. Thank you, Your Honor. Please, the Court. Addressing something that Mr. Hall raised about administrative remedies, I think it's pretty clear that USERRA does not impose, in fact, specifically prohibits the application of any administrative remedies. So to the extent that now the city is arguing that there was an administrative remedy reason for the denial of the first claim, we probably now don't have a claim preclusion issue under Res Chutecada. But claim preclusion doesn't require that you actually have brought the claim. It only requires that you could have and that it's the same set of facts. Understood. And then I guess the salient point there is what is could have brought if it's dismissed under administrative remedy. Right. Which was our discussion earlier. Yes, ma'am. That's all I wanted to say on that. And then with respect to the statute of limitations, there's a growing line of case law interpreting what statute of limitations, if any, applies to USERRA when it was amended by the VBIA in 2008, unequivocally stated there is no statute of limitations. Correct. But did that revive something that had already had its statute of limitations expired? Ordinarily, the rule is that if a statute of limitations has fully expired, then a new longer limit doesn't apply. And why wouldn't that be true here? Yes, ma'am. I see that I'm out of time. So there's a split in authority both at the district and circuit court level now regarding what are being called live, quote, unquote, live claims. If a claim was live when the VBIA was passed in 2008, meaning it had accrued sometime after October 2004, generally those are being considered to still be live. This was earlier than that. Yes, ma'am. I understand that. And then those cases often hold, as Middleton did. Middleton didn't reach the live claim argument. But Middleton discussed claims prior to October 2004 were probably statute barred. I would, however, invite the Court to look at the legislative history. Both the Senate committee notes, which are pretty clear that there has never been a statute of limitation to State or Federal under USERRA, and the Department of Labor echoed that sentiment. So whether counsel are properly briefing that before courts such as yourselves, I don't know. But it's pretty clear that the Senate and the Department of Labor have taken the position that there is not and never has been a statute of limitations under USERRA. The courts seem to differ. Thank you, Your Honor. Thank you, counsel. The case just argued is submitted, and we appreciate both of the arguments. We will stand adjourned for this morning's session.
judges: Friedman, Graber, Watford